## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>[1] YAMIL H. KOURI PEREZ,<br>[COUNTS 1, 2 and 7]<br>[2] JEANNETTE SOTOMAYOR VAZQUEZ,<br>[COUNT 1, 4, 6, 7 and 8]<br>[3] ANGEL L. CORCINO MAURAS,<br>[COUNT 1, 2, 3, 4, 5, 7]<br>[4] JULIO R. CORCINO MAURAS,<br>[COUNT 1, 3]<br>[5] JUAN E. RIZEK NASSAR,<br>[COUNT 1, 6, 7]<br>[6] RAFAEL A. RIZEK NASSAR,<br>[COUNT 1, 6]<br>[7] MILAGROS GARCIA LEON,<br>[COUNT 1, 4, 8]<br>[8] ARMANDO BOREL BARREIRO,<br>[COUNT 1, 5, 7]<br>Defendants. | I N D I C T M E N T<br><br>CRIMINAL NO. 97-91 (SEC)<br><br>CRIMINAL VIOLATIONS:<br>18 USC §371<br>[COUNT 1]<br>18 USC §666<br>[COUNTS 2 THROUGH 7]<br>18 USC §1512(b)<br>[COUNT 8]<br>18 USC §2<br>[COUNT 2 THROUGH 8]<br><br><br><br><br>(EIGHT COUNTS) |

The Grand Jury charges that:

### COUNT I

### Conspiracy to Commit Theft
### Concerning Program Receiving Federal Funds

### 18 USC §371

### GENERAL ALLEGATIONS

1.    At times material to this Indictment, Advanced Community Health Services, Inc., (hereinafter "ACHS"), was a for profit corporation which was incorporated under the laws of the Commonwealth of Puerto Rico on or about August 21, 1987.

2.    At times material to this Indictment ACHS contracted with the Municipality of San Juan, for the purpose of creating, developing, and administering the "Instituto del Sida de San Juan", or the San Juan Aids Institute, (hereinafter "ISSJ"), in conjunction with Harvard Institute for International Development, (hereinafter "HIID").

Indictment
Page 2

3.   At times material to this Indictment, ISSJ was an operational branch of the Municipality of San Juan, dedicated to the comprehensive treatment of persons afflicted with Acquired Immune Deficiency Syndrome, (hereinafter "AIDS"), which was fully administered by ACHS.

4.   On or about January 19, 1988, the ISSJ began its operations as an organization presumably dedicated to the comprehensive treatment of the AIDS crisis in San Juan.

5.   On or about June 4, 1990, ACHS changed its corporate status to that of a non-profit corporation, in order to facilitate its receipt of federal grants for the research and treatment of AIDS.

6.   On or about January 1, 1991, ACHS began to receive federal grants for various operational objectives connected with ACHS's declared mission to combat the AIDS crisis in San Juan.

7.   Between on or about January 1, 1991 through on or about February 28, 1994, ACHS received approximately twelve million two hundred thirty-eight thousand one hundred eighty-six ($12,238,186.00) dollars in federal grants, in approximately the following yearly amounts:

| YEAR PAYMENT RECEIVED | AMOUNT RECEIVED FROM FEDERAL GOVERNMENT |
|---|---|
| 1991 | $2,939,338.00 |
| 1992 | $4,580,762.00 |
| 1993 | $4,341,508.00 |
| 1994 | $  376,578.00 |

8.   At all times material to this Indictment, the defendant, **YAMIL H. KOURI PEREZ**, was a coordinator for Latin America and the

Caribbean for Harvard Institute for International Development affiliated to Harvard University, as well as its principal investigator.

9.    At all times material to this Indictment, HIID was an organization affiliated with Harvard University, which provided consulting services to ACHS and ISSJ, to assist in the development of a comprehensive AIDS treatment program in San Juan.

10.    At all times material to this Indictment, the defendant, **YAMIL H. KOURI PEREZ**, was a physician who participated in the development of ACHS and the ISSJ.    The defendant, **YAMIL H. KOURI PEREZ**, exerted great influence in the operation of ACHS and ISSJ, and was consulted regarding its major decisions.

11.    At times material to this Indictment, the defendant, **JEANNETTE SOTOMAYOR VAZQUEZ**, was the manager of operations of ACHS and ISSJ. As such, the defendant, **JEANNETTE SOTOMAYOR VAZQUEZ**, was responsible for the day to day operations of the ISSJ, including fiduciary responsibility for ensuring the proper management of the ACHS operating account.

12.    At times material to this Indictment, the defendant, **ANGEL L. CORCINO MAURAS**, was the comptroller for ACHS.    As such, the defendant, **ANGEL L. CORCINO MAURAS**, was responsible for supervision of the accounting department at ACHS, including the obligation for the receipt, custody, disbursement and proper management of the funds assigned to ACHS.

13.    At times material to this Indictment, the defendant, **JULIO R. CORCINO MAURAS**, was an attorney employed by ACHS as a legal advisor for patient rights.

Indictment
Page 4

14.   At times material to this Indictment, the defendant, **JUAN E. RIZEK NASSAR**, was a physician and president of ACHS.   The defendant, **JUAN E. RIZEK NASSAR**, also contracted with ACHS to establish a quality control department within ISSJ.

15.   At times material to this Indictment, the defendant, **RAFAEL A. RIZEK NASSAR**, was a physician who contracted with ACHS to provide medical oncological services to the ISSJ.

16.   At times material to this Indictment, the defendant, **MILAGROS GARCIA LEON**, was a personnel and payroll officer at ACHS.

17.   At times material to this Indictment, the defendant, **ARMANDO BOREL BARREIRO**, was custodian of property for ACHS and ISSJ.   The defendant, **ARMANDO BOREL BARREIRO**, was also responsible for the development of an in-house laboratory at ACHS.

18.   At times material to this Indictment, the accounting department at ACHS processed accounts payables in substantially the following manner:

a.   A check drawn on the operational account of ACHS was prepared when an invoice or bill for services or supplies provided to ACHS and/or ISSJ was received, or upon submission of a check request form requesting payment of a contractual obligation of ACHS and/or ISSJ, in the absence of an invoice or a bill.

b.   A check request form would also, at times, be generated for the purpose of allowing the transfer of funds between various ACHS bank accounts.

c.   After the check had been written, it was submitted for signature to authorized ACHS officials.   Usually, the

Indictment
Page 5

defendants, **JEANNETTE SOTOMAYOR VAZQUEZ** and **JUAN E. RIZEK NASSAR**,
were the executing officials.

19.    At times material to this Indictment, the following
corporations received funds from ACHS and the ISSJ:

| CORPORATION | DATE OF INCORPORA-TION | RELATIONSHIP WITH ACHS/ISSJ | OFFICERS AND/OR SHAREHOLDERS |
|---|---|---|---|
| Octagon Corporation | May 7, 1992 | Purchasing agent ACHS and ISSJ | Shareholders: Yamil Kouri Angel Corcino Rafael Rizek |
| Advanced Food Services | March 19, 1993 | No contractual relationship | Shareholders: Yamil Kouri Julio R. Corcino Mauras Angel L. Corcino Mauras Officer: Angel L. Corcino Mauras, President |
| Advanced Combo Supplies | February 7, 1992 | Contract to sell miscel-laneous items to ACHS/ISSJ | Shareholders: Yamil Kouri Angel L. Corcino Mauras Julio Corcino Mauras Officers: Angel L. Corcino Mauras, President |
| Pan American Enterprises | 1992 | Creditor of ACHS | Shareholders and Officers: Yamil Kouri, President |

20.    At times material to this Indictment, the defendant,
**YAMIL H. KOURI PEREZ**, executed a contract pursuant to which he
agreed to lend Advanced Combo Supplies, Inc., the sum of
$1,000,000.00, to be paid in periodic installments.

21.    At times material to this Indictment, Advanced Combo
Supplies, Inc., changed its corporate name to Advanced Food
Service, Inc.

Indictment
Page 6

22.   At times material to this Indictment, the defendant,
**YAMIL H. KOURI PEREZ**, managed and controlled Octagon Corporation,
and was kept abreast of the daily operations of the company through
his representative, defendant **ARMANDO BOREL BARREIRO.**

23.   At times material to this Indictment, the defendant,
**YAMIL H. KOURI PEREZ**, owned and controlled Panamerican Corporation
of Radiology, (hereinafter "Panamerican"), a corporation operating
and existing under the laws of the Commonwealth of Puerto Rico.

24.   At times material to this Indictment, Panamerican
maintained asset account number 7560002647 at the Bank and Trust of
Puerto Rico, on which the defendants, **YAMIL H. KOURI PEREZ** and
**ANGEL L. CORCINO MAURAS**, were authorized signatories.   Bank
statements for this account were mailed to the home address of the
defendant, **YAMIL H. KOURI PEREZ.**

25.   At times material to this Indictment, Advanced Food
Service,   Inc.,   (hereinafter   "Advanced   Food"),   maintained
operating account number 7570001402, at the Bank and Trust of
Puerto Rico, on which the defendant, **ANGEL L. CORCINO MAURAS**, was
an authorized signatory.   Bank statements for this account were
mailed to the home address of the defendant, **YAMIL H. KOURI PEREZ.**

26.   At times material to this Indictment, Advanced Food
Service, Inc., (hereinafter "Advanced Food"), maintained payroll
account numbers 7570001410 and 203867306, at the Bank and Trust of
Puerto Rico, on which the defendant, **ANGEL L. CORCINO MAURAS**, was
an authorized signatory.   Bank statements for this account were
mailed to the home address of the defendant, **YAMIL H. KOURI PEREZ.**

Indictment
Page 7

27.   At times material to this Indictment, the defendant, **ANGEL L. CORCINO MAURAS**, maintained a personal checking account number 203683843 at Banco Popular.

### THE CONSPIRACY AND ITS OBJECTS

28.   From in or about January 1991, through in or about February 1994, at the City of San Juan, in the District of Puerto Rico, and elsewhere, and within the jurisdiction of this Court, the defendants,

> [1] YAMIL H. KOURI PEREZ,
> [2] JEANNETTE SOTOMAYOR VAZQUEZ,
> [3] ANGEL L. CORCINO MAURAS,
> [4] JULIO R. CORCION MAURAS,
> [5] JUAN E. RIZEK NASSAR,
> [6] RAFAEL A. RIZEK NASSAR,
> [7] MILAGROS GARCIA LEON,
> and
> [8] ARMANDO BOREL BARREIRO,

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to commit an offense against the United States, namely, as agents of an organization which received benefits in excess of $10,000.00 under a Federal program involving a grant, or other form of Federal assistance, in each successive one year period beginning in 1991 through 1994, to knowingly and willfully embezzle, steal, and obtain by fraud, and without authority knowingly convert to the use of a person not the rightful owner, and intentionally misapply property worth at least $5,000.00 owned by such organization, that is, approximately $500,000.00 in program funds, in violation of Title 18, United States Code, Section 666.

All in violation of Title 18, United States Code, Section 371.

Indictment
Page 8

## OBJECT OF THE CONSPIRACY

29.   It was the purpose and object of the conspiracy for the defendants, **YAMIL H. KOURI PEREZ, JEANNETTE SOTOMAYOR VAZQUEZ, ANGEL L. CORCINO MAURAS, JULIO R. CORCINO MAURAS, JUAN E. RIZEK NASSAR, RAFAEL A. RIZEK NASSAR, MILAGROS GARCIA LEON,** and **ARMANDO BOREL BARREIRO,** together with others known and unknown to the Grand Jury, to use the funds of ACHS and the ISSJ, for unauthorized personal and other benefits, through a pattern of deceptive conduct and transactions of related corporate entities of the defendants, designed to create the appearance of legitimacy, when in fact, the transactions were nothing more than a means of concealing the fraudulent nature of the disbursements.

As a result of the unlawful conspiracy, the defendants embezzled, stole and obtained by fraud, in excess of $500,000.00 of public funds which were designated for the research and treatment of the AIDS crisis in San Juan.

## MANNER AND MEANS OF THE CONSPIRACY

30.   It was a part of the manner and means of the unlawful conspiracy that:

31.   ACHS would be converted to a non-profit corporation, in order to improve its ability to qualify for federal grants, and making it eligible for increased amounts of federal funding.

32.   The defendants, **YAMIL H. KOURI PEREZ, JEANNETTE SOTOMAYOR VAZQUEZ, ANGEL L. CORCINO MAURAS, JULIO R. CORCINO MAURAS, JUAN E. RIZEK NASSAR, RAFAEL A. RIZEK NASSAR, MILAGROS GARCIA LEON,** and **ARMANDO BOREL BARREIRO,** would be placed in significant positions

Indictment
Page 9

within ACHS and ISSJ, which would enable them to manipulate the funds received by ACHS for the research and treatment of AIDS.

33.   Corporations under the management and control of the defendants, **YAMIL H. KOURI PEREZ, ANGEL L. CORCINO MAURAS, JULIO R. CORCINO MAURAS, JUAN E. RIZEK NASSAR, RAFAEL A. RIZEK NASSAR,** and **ARMANDO BOREL BARREIRO,** would be created for the purpose of contracting with ACHS, under the guise of offering goods and services to ACHS and the ISSJ.

34.   Fictitious debts would be created between ACHS and/or ISSJ, and the corporations controlled by the defendants, in order to create the appearance that the funds paid to these corporations were for bona fide services.

35.   The funds paid to these corporations would be used for the personal benefit of the defendants.

36.   At times, funds processed for the payment of legitimate debts of ACHS and/or ISSJ would be unlawfully diverted for the personal benefit of the defendants.

37.   Funds would be paid to individuals who provided personal services to the defendants, under the guise that they had provided bona fide services to ACHS and/or the ISSJ.

38.   Funds from the ACHS operating account would be converted into manager's checks in an effort to facilitate the transfer of the funds to their ultimate destination.

## OVERT ACTS

39.   In furtherance of the conspiracy and in order to effects its objects, the defendants, **YAMIL H. KOURI PEREZ, JEANNETTE SOTOMAYOR VAZQUEZ, ANGEL L. CORCINO MAURAS, JULIO R. CORCINO**

**MAURAS, JUAN E. RIZEK NASSAR, RAFAEL A. RIZEK NASSAR, MILAGROS GARCIA LEON**, and **ARMANDO BOREL BARREIRO**, and others known and unknown to the Grand Jury, committed and caused to be committed the below enumerated acts, among others, in the District of Puerto Rico and elsewhere:

40. On or about August 5, 1992, the defendant, **ANGEL L. CORCINO MAURAS**, caused a check to be written from ACHS general account, in the amount of $40,000.00, payable to ACHS Payroll, and caused said check to be deposited in the Advanced Combo Supplies account.

41. On or about December 21, 1992, the defendant, **ANGEL L. CORCINO MAURAS**, caused a check to be written form ACHS/Ryan White account, in the amount of $35,000.00, payable to ACHS Payroll, and caused said check to be deposited in the Advanced Food Payroll account.

42. On or about October 20, 1992, the defendant, **ANGEL L. CORCINO MAURAS**, caused a check to be written from ACHS general account, in the amount of $25,000.00, payable to ACHS Payroll, and caused said check to be deposited in the Advanced Food Service account.

43. On or about May 20, 1992, the defendant, **ANGEL L. CORCINO MAURAS**, caused a check to be written from ACHS payroll account, in the amount of $22,000.00, payable to ACHS, and caused said to be deposited in the Advanced Combo Supplies account.

44. In or about 1992, the exact date being unknown to the Grand Jury, the defendant, **YAMIL H. KOURI PEREZ**, purchased fifty

Indictment
Page 11

percent of the shares of Advanced Food, thereby becoming an owner
of the company.

45.   On or about December 1, 1993, the defendant, **YAMIL H.
KOURI PEREZ**, cashed a check in the amount of $5,455.00 from the
Advance Food Service payroll account.

46.   On or about February 9, 1993, the defendant, **ANGEL L.
CORCINO MAURAS**, caused a check to be written from ACHS general
account, in the amount of $20,000.00, payable to ACHS Payroll, and
caused said check to be deposited in the Advanced Food Service
operating account.

47.   On or about January 31, 1994, the defendant, **YAMIL H.
KOURI PEREZ**, caused Pan American Enterprises, Inc., to receive a
check in the amount of $17,000.00 from the Advance Food Service
operating account.

48.   On or about March 9, 1994, the defendant, **ANGEL L.
CORCINO MAURAS**, caused a check to be written, in the amount of
$924.14 payable to Octagon, and caused said check to be deposited
into his personal checking account.

49.   On or about October 31, 1990, the defendant, **ANGEL L.
CORCINO MAURAS**, caused a check to be written, in the amount of
$9,350.00, payable to a third party.

50.   On or about February 11, 1991, the defendant, **JULIO R.
CORCINO MAURAS**, caused the said check to be converted to cash.

51.   On or about October 31, 1991, the defendant, **ANGEL L.
CORCIÑO MAURAS**, caused a check to be written, in the amount of
$5,550.00, payable to a third party.

Indictment
Page 12

52. On or about January 10, 1992, the defendant, **JULIO R. CORCINO MAURAS**, caused the said check to be converted to cash.

53. On or about October 22, 1992, the defendant, **ANGEL L. CORCINO MAURAS**, caused a check to be written, in the amount of $8,000.00, payable to a third party.

54. On or about October 30, 1992, the defendant, **JULIO R. CORCINO MAURAS**, caused the said check to be converted to cash.

55. On or about January 22, 1993, the defendant, **ANGEL L. CORCINO MAURAS**, caused a check to be written, in the amount of $8,000.00, payable to Octagon Corporation.

56. On or about January 25, 1993, the defendant, **JULIO R. CORCINO MAURAS**, caused the said check to be converted to cash.

57. On or about or about April 12, 1991, the defendants, **MILAGROS GARCIA LEON** and **JEANNETTE SOTOMAYOR VAZQUEZ**, contracted an individual to purportedly work at ACHS, when, in fact, that individual would actually work as a housekeeper at the defendant's, **JEANNETTE SOTOMAYOR VAZQUEZ**, residence. Said individual shall hereinafter be referred to as the "Sotomayor housekeeper."

58. On or about April 15, 1991, the defendants, **MILAGROS GARCIA LEON** and **JEANNETTE SOTOMAYOR VAZQUEZ**, caused the Sotomayor housekeeper to execute falsified time cards which claimed that she worked at ACHS for the pay period between on or about April 1, 1991 through on or about April 15, 1991.

59. On or about April 12, 1991, the defendant, **ANGEL L. CORCINO MAURAS**, caused a check to be written on the ACHS payroll account, in the amount of $224.37, to pay Sotomayor housekeeper.

60. On or about April 12, 1991, the defendant, **JEANNETTE**

Indictment
Page 13

**SOTOMAYOR VAZQUEZ**, caused a check to be signed, which check was written on the ACHS payroll account, in the amount of $224.37, to pay Sotomayor housekeeper.

61.  On or about January 15, 1992, the defendants, **MILAGROS GARCIA LEON** and **JEANNETTE SOTOMAYOR VAZQUEZ**, caused the Sotomayor housekeeper to execute falsified time cards which claimed that she worked at ACHS for the paid period between on or about January 1, 1992 through on or about January 15, 1992.

62.  On or about January 15, 1992, the defendant, **ANGEL L. CORCINO MAURAS**, caused a check to be written on the ACHS payroll account, in the amount of $299.73, to pay Sotomayor housekeeper.

63.  On or about January 15, 1992, the defendant, **JEANNETTE SOTOMAYOR VAZQUEZ**, caused a check to be signed, which check was written on the ACHS payroll account, in the amount of $299.73, to pay Sotomayor housekeeper.

64.  On or about January 15, 1993, the defendants, **MILAGROS GARCIA LEON** and **JEANNETTE SOTOMAYOR VAZQUEZ**, caused the Sotomayor housekeeper to execute falsified time cards which claimed that she worked at ACHS for the pay period between on or about January 1, 1993 through on or about January 15, 1993.

65.  On or about January 14, 1993, the defendant, **ANGEL L. CORCINO MAURAS**, caused a check to be written on the ACHS payroll account, in the amount of $361.53, to pay Sotomayor housekeeper.

66.  On or about January 14, 1993, the defendant, **JEANNETTE SOTOMAYOR VAZQUEZ**, caused a check to be signed, which check was written on the ACHS payroll account, in the amount of $361.53, to pay Sotomayor housekeeper.

Indictment
Page 14

67. On or about January 31, 1994, the defendants, **MILAGROS GARCIA LEON** and **JEANNETTE SOTOMAYOR VAZQUEZ**, caused the Sotomayor housekeeper to execute falsified time cards which claimed that she worked at ACHS for the pay period between on or about January 16, 1994 through on or about January 31, 1994.

68. On or about January 28, 1994, the defendant, **ANGEL L. CORCINO MAURAS**, caused a check to be written on the ACHS payroll account, in the amount of $762.24, to pay Sotomayor housekeeper.

69. On or about January 28, 1994, the defendant, **JEANNETTE SOTOMAYOR VAZQUEZ**, caused a check to be signed, which check was written on the ACHS payroll account, in the amount of $762.24, to pay Sotomayor housekeeper.

70. On or about September 24, 1992, the defendant, **ANGEL L. CORCINO MAURAS**, caused a check in the amount of $25,000.00 to be written on the ACHS general account, payable to Octagon Corporation.

71. On or about September 24, 1992, the defendant, **ANGEL L. CORCINO MAURAS**, caused a check in the amount of $25,000.00 to be written on the ACHS general account, payable to Octagon Corporation.

72. On or about September 25, 1992, the defendant, **ARMANDO BOREL BARREIRO**, caused two checks, in the respective amounts of $25,000.00 to be deposited into the Octagon Corporation account.

73. On or about September 28, 1992, the defendant, **ARMANDO BOREL BARREIRO**, caused two checks to be written from the account Octagon Corporation account, payable to himself, in the respective

Indictment
Page 15

amounts of $7,142.85, and $3,290.50, which the defendant, **ARMANDO BOREL BARREIRO**, caused to be converted to cash.

74.  On or about September 29, 1992, the defendant, **ARMANDO BOREL BARREIRO**, caused a check to be written from the account Octagon Corporation account, payable to himself, in the amount of $8,343.85, which the defendant, **ARMANDO BOREL BARREIRO**, caused to be converted to cash.

75.  On or about October 1, 1992, the defendant, **ARMANDO BOREL BARREIRO**, caused four checks to be written from Octagon Corporation account, payable to Advance Food Service, in the respective amounts of $7,598.55, $8,677.30, $6,993.50, and $7,953.45, which the defendant, **ARMANDO BOREL BARREIRO**, caused to be deposited in the Advance Food Service operating account.

76.  In or about November, 1992, the exact date being unknown to the Grand Jury, the defendant, **ANGEL L. CORCINO MAURAS**, represented to the president of Octagon that $50,000.00 of ACHS funds were laundered through the Octagon account for a purpose unrelated to the legitimate functions of ACHS and/or ISSJ.

77.  On or about February 21, 1992, the defendants, **JEANNETTE SOTOMAYOR VAZQUEZ** and **JUAN E. RIZEK NASSAR**, caused a check to be written from the ACHS general account, payable to a third party, in the amount of $10,000.00, for professional services dedicated to construction work performed at the residence of the defendant, **RAFAEL A. RIZEK NASSAR**.

78.  On or about May 26, 1992, the defendants, **JEANNETTE SOTOMAYOR VAZQUEZ** and **JUAN E. RIZEK NASSAR**, caused a check to be written from the ACHS general account, payable to a third party, in

Indictment
Page 16

the amount of $10,000.00, for professional services dedicated to construction work performed at the residence of the defendant, **RAFAEL A. RIZEK NASSAR.**

79. On or about May 18, 1993, the defendant, **RAFAEL A. RIZEK NASSAR**, required that the third party write a check payable to ACHS, in the amount of $10,000.00, and in exchange provided the third party with a check for the same amount drawn on the personal account of the defendant, **RAFAEL A. RIZEK NASSAR.**

80. On or about October 22, 1992, the defendants, **JEANNETTE SOTOMAYOR VAZQUEZ** and **JUAN E. RIZEK NASSAR**, caused a check to be written from the ACHS general account, payable to a third party, in the amount of $4,250.00, for professional services.

81. On or about October 22, 1992, a third party, caused the said check in the amount of $4,250.00 to be converted to cash and turned over the monies to the defendant, **ANGEL L. CORCINO MAURAS.**

82. On or about October 22, 1992, the defendants, **JEANNETTE SOTOMAYOR VAZQUEZ** and **JUAN E. RIZEK NASSAR**, caused a check to be written from the ACHS general account, payable to a third party, in the amount of $6,000.00, for professional services.

83. On or about October 22, 1992, a third party, caused the said check to be converted to cash and turned over the monies to the defendant, **ANGEL L. CORCINO MAURAS.**

84. On or about October 22, 1992, the defendants, **JEANNETTE SOTOMAYOR VAZQUEZ** and **JUAN E. RIZEK NASSAR**, caused a check to be written from the ACHS general account, payable to a third party, in the amount of $4,250.00, for professional services.

Indictment
Page 17

85.  On or about October 22, 1992, a third party, caused the said check to be converted to cash and turned over the monies to the defendant, **ANGEL L. CORCINO MAURAS**.

86.  On or about October 22, 1992, the defendant, **ANGEL L. CORCINO MAURAS**, required that a third party convert into cash $18,750.00 in checks from the ACHS general account.

87.  On or about October 26, 1992, the defendant, **ANGEL L. CORCINO MAURAS**, provided **YAMIL H. KOURI PEREZ**, with $18,750.00 in cash of ACHS funds.

88.  Counts Two through Seven of this Indictment are incorporated by reference herein and designated as over acts of this conspiracy.

### COUNT TWO

### Theft Concerning Program Receiving Federal Funds

### 18 USC § 666(a)(1)(A)

1.  Paragraphs one (1) through ten (10), and twelve (12), and eighteen (18) through (27) twenty-seven, of the General Allegations are realleged and incorporated herein by reference.

2.  From on or about May 7, 1992, through in or about March 9, 1994, at the City of San Juan, in the District of Puerto Rico, and elsewhere, and within the jurisdiction of this Court, the defendants,

[1] YAMIL H. KOURI PEREZ,
and
[3] ANGEL L. CORCINO MAURAS,

the defendants herein, being agents of an organization as this term is defined in Title 18, United States Code, Section 666(d)(1), aiding and abetting each other, did knowingly, willfully,

Indictment
Page 18

unlawfully, and intentionally misapply and embezzle, steal, obtain

by fraud, or otherwise without authority convert to their own

personal use, without being the rightful owners, property valued at

$5,000.00 or more, that is, approximately $211,552.12, which was

owned by or under the care, custody, or control of Advanced

Community Health Services ("ACHS"), an organization that received

in a one year period benefits in excess of $10,000.00 under a

Federal program through a contract, grant, subsidy, loan,

guarantee, insurance, or any form of Federal assistance.

All in violation of Title 18, United States Code, Section

666(a)(1)(A) and 2.

## COUNT THREE

### Theft Concerning Program Receiving Federal Funds

### 18 USC § 666(a)(1)(A)

1.    Paragraphs one (1) through seven (7), twelve (12),

thirteen (13), eighteen (18) through nineteen (19), and twenty-six

(26), and twenty-seven (27), of the General Allegations are

realleged and incorporated herein by reference.

2.    From on or about October 15, 1992, through in or about

January 25, 1993, at the City of San Juan, in the District of

Puerto Rico, and elsewhere, and within the jurisdiction of this

Court, the defendants,

[3] ANGEL L. CORCINO MAURAS,
and
[4] JULIO R. CORCINO MAURAS,

the defendants herein, being agents of an organization as this term

is defined in Title 18, United States Code, Section 666(d)(1),

aiding and abetting each other, did knowingly, willfully,

Indictment
Page 19

unlawfully, and intentionally misapply and embezzle, steal, obtain by fraud, or otherwise without authority convert to their own personal use, without being the rightful owners, property valued at $5,000.00 or more, that is, approximately $69,800.00, which was owned by or under the care, custody, or control of Advanced Community Health Services ("ACHS"), an organization that received in a one year period benefits in excess of $10,000.00 under a Federal program through a contract, grant, subsidy, loan, guarantee, insurance, or any form of Federal assistance.

All in violation of Title 18, United States Code, Section 666(a)(1)(A) and 2.

### COUNT FOUR

### Theft Concerning Program Receiving Federal Funds

### 18 USC § 666(a)(1)(A)

1. Paragraphs one (1) through seven (7), eleven (11), twelve (12), sixteen (16), eighteen (18), and nineteen (19), of the General Allegations are realleged and incorporated herein by reference.

2. From on or about May 15, 1992, through in or about January 31, 1994, at the City of San Juan, in the District of Puerto Rico, and elsewhere, and within the jurisdiction of this Court, the defendants,

[2] JEANNETTE SOTOMAYOR VAZQUEZ,
[3] ANGEL L. CORCINO MAURAS,
and
[7] MILAGROS GARCIA LEON,

the defendants herein, being agents of an organization as this term is defined in Title 18, United States Code, Section 666(d)(1), aiding and abetting each other, did knowingly, willfully,

Indictment
Page 20

unlawfully, and intentionally misapply and embezzle, steal, obtain
by fraud, or otherwise without authority convert to their own
personal use, without being the rightful owners, property valued at
$5,000.00 or more, that is, approximately $20,956.29, which was
owned by or under the care, custody, or control of Advanced
Community Health Services ("ACHS"), an organization that received
in a one year period benefits in excess of $10,000.00 under a
Federal program through a contract, grant, subsidy, loan,
guarantee, insurance, or any form of Federal assistance.

All in violation of Title 18, United States Code, Section
666(a)(1)(A) and 2.

### COUNT FIVE

### Theft Concerning Program Receiving Federal Funds

### 18 USC § 666(a)(1)(A)

1.    Paragraphs one (1) through seven (7), twelve (12),
seventeen (17), eighteen (18), nineteen (19), and twenty-two (22),
of the General Allegations are realleged and incorporated herein by
reference.

2.    On or about September 28, 1992, at the City of San Juan,
in the District of Puerto Rico, and elsewhere, and within the
jurisdiction of this Court, the defendants,

> [3] ANGEL L. CORCINO MAURAS,
> and
> [8] ARMANDO BOREL BARREIRO,

the defendants herein, being agents of an organization as this term
is defined in Title 18, United States Code, Section 666(d)(1),
aiding and abetting each other, did knowingly, willfully,
unlawfully, and intentionally misapply and embezzle, steal, obtain

Indictment
Page 21

by fraud, or otherwise without authority convert to their own

personal use, without being the rightful owners, property valued at

$5,000.00 or more, that is, approximately $50,000.00, which was

owned by or under the care, custody, or control of Advanced

Community Health Services ("ACHS"), an organization that received

in a one year period benefits in excess of $10,000.00 under a

Federal program through a contract, grant, subsidy, loan,

guarantee, insurance, or any form of Federal assistance.

All in violation of Title 18, <u>United States Code</u>, Section

666(a)(1)(A) and 2.

**COUNT SIX**

**Theft Concerning Program Receiving Federal Funds**

**18 USC § 666(a)(1)(A)**

1.    Paragraphs one (1) through seven (7), eleven (11),

fourteen (14), fifteen (15), eighteen (18), and nineteen (19), of

the General Allegations are realleged and incorporated herein by

reference.

2.    On or about May 26, 1992, at the City of San Juan, in the

District of Puerto Rico, and elsewhere, and within the jurisdiction

of this Court,

[2] JEANNETTE SOTOMAYOR VAZQUEZ,
[5] JUAN E. RIZEK NASSAR,
and
[6] RAFAEL A. RIZEK NASSAR,

the defendants herein, being agents of an organization as this term

is defined in Title 18, <u>United States Code</u>, Section 666(d)(1),

aiding and abetting each other, did knowingly, willfully,

unlawfully, and intentionally misapply and embezzle, steal, obtain

by fraud, or otherwise without authority convert to their own

Indictment
Page 22

personal use, without being the rightful owners, property valued at

$5,000.00 or more, that is, approximately $10,000.00, which was

owned by or under the care, custody, or control of Advanced

Community Health Services ("ACHS"), an organization that received

in a one year period benefits in excess of $10,000.00 under a

Federal program through a contract, grant, subsidy, loan,

guarantee, insurance, or any form of Federal assistance.

All in violation of Title 18, <u>United States Code</u>, Section

666(a)(1)(A) and 2.

### COUNT SEVEN

### Theft Concerning Program Receiving Federal Funds

### 18 USC § 666(a)(1)(A)

1.   Paragraphs one (1) through twelve (12), fourteen (14),

seventeen (17), eighteen (18) through twenty-seven (27), of the

General Allegations are realleged and incorporated herein by

reference.

2.   On or about October 22, 1992, at the City of San Juan, in

the District of Puerto Rico, and elsewhere, and within the

jurisdiction of this Court, the defendants,

> [1] YAMIL H. KOURI PEREZ,
> [2] JEANNETTE SOTOMAYOR VAZQUEZ,
> [3] ANGEL L. CORCINO MAURAS,
> [5] JUAN E. RIZEK NASSAR,
> and
> [8] ARMANDO BOREL BARRETO,

the defendants herein, being agents of an organization as this term

is defined in Title 18, <u>United States Code</u>, Section 666(d)(1),

aiding and abetting each other, did knowingly, willfully,

Indictment
Page 23

unlawfully, and intentionally misapply and embezzle, steal, obtain by fraud, or otherwise without authority convert to their own personal use, without being the rightful owners, property valued at $5,000.00 or more, that is, approximately $18,750.00, which was owned by or under the care, custody, or control of Advanced Community Health Services ("ACHS"), an organization that received in a one year period benefits in excess of $10,000.00 under a Federal program through a contract, grant, subsidy, loan, guarantee, insurance, or any form of Federal assistance.

All in violation of Title 18, United States Code, Section 666(a)(1)(A) and 2.

## COUNT EIGHT

### OBSTRUCTION OF CRIMINAL INVESTIGATIONS BY BRIBERY

### 18 USC §1510

Between on or about the February 12, 1997, through on or about March 1, 1997, at the City of San Juan, in the District of Puerto Rico, and elsewhere, and within the jurisdiction of this Court,

[2] JEANNETTE SOTOMAYOR VAZQUEZ,

Indictment
Page 24

                              and
              [7] MILAGROS GARCIA LEON,

the defendants herein, aiding and abetting each other, did

knowingly attempt to corruptly persuade another person, with the

intent to influence the testimony of said person in an official

proceeding, and with the intent to cause said person to withhold

testimony from an official proceeding, and hinder and delay the

communication to a law enforcement officer of the United States of

information relating to the commission of a Federal offense, in

violation of Title 18, <u>United States Code</u>, Section 1512(b) and 2.


                              A TRU

                              FOREPERSON


GUILLERMO GIL
UNITED STATES ATTORNEY


JORGE E. VEGA-PACHECO
ASSISTANT UNITED STATES ATTORNEY
CHIEF, CRIMINAL DIVISION


MARIA A. DOMINGUEZ VICTORIANO
ASSISTANT UNITED STATES ATTORNEY

Dated: May 7, 1997.